*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARSHERI D.D. EVERSON,

       Plaintiff-Appellant,

v

DELORES J. WILLIAMS,

       Defendant-Appellee.

FOR PUBLICATION
May 21, 2019
9:20 a.m.

No. 340521
Wayne Circuit Court
LC No. 16-010607-CH

Before: MARKEY, P.J., and FORT HOOD and GADOLA, JJ.

FORT HOOD, J.

Plaintiff Marsheri D.D. Everson appeals as of right the trial court's order granting summary disposition and quieting title to 20280 Kentfield, Detroit, Michigan (the Kentfield property) in favor of defendant Delores J. Williams. We reverse and remand for proceedings consistent with this opinion.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. THE KENTFIELD PROPERTY

This action involves the Kentfield property, which originally belonged to plaintiff's grandparents, Cedric D. Everson and Elizabeth A. Everson. While plaintiff was still a minor[1] her grandparents conveyed their interest in the Kentfield property to plaintiff, while retaining life estates in the property. The conveyance provided, in pertinent part, as follows:

> With the filing of this Quit Claim Deed it is hereby noted that the Grantors Cedric and Elizabeth Everson Becomes [sic] Tenants of the subject property[.] [I]t is therefore a conditio[n] of this Conveyance that Cedric D. Everson and Elizabeth

---

[1] Plaintiff was born on November 13, 1985.

-1-

A. Everson enjoy Peaceful and Continual Occupan[c]y of said property for the remainder of their natural lives.

Cedric died on January 17, 1997. On April 2, 1997, plaintiff, 11-years-old at the time, purportedly conveyed her interest in the Kentfield property to Elizabeth by way of a quitclaim deed. Following proceedings in the Wayne Probate Court which will be discussed in detail subsequently in this opinion, on August 26, 1999, Elizabeth executed a warranty deed for the Kentfield property to Rondalyn Everson for the sum of $70,000. Rondalyn subsequently defaulted on her mortgage against the property and a sheriff's deed on mortgage sale was entered on February 26, 2004. On March 12, 2004, Ameriquest Mortgage Company quit claimed the property to WM Specialty Mortgage, LLC. WM Specialty Mortgage executed a covenant deed to Charles Smith for the Kentfield property on January 25, 2005. Finally, on February 24, 2010, Smith quit claimed the Kentfield property to defendant. Elizabeth died on July 18, 2014.

## B. THE PRESENT ACTION

On August 19, 2016, plaintiff filed the instant action seeking to quiet title to the Kentfield property. As pertinent to this appeal, defendant filed a motion for summary disposition under MCR 2.116(C)(7) and (C)(10) claiming that plaintiff's action was (1) barred by the applicable statute of limitations, (2) precluded by the application of the doctrine of res judicata and that title to the Kentfield property should be quieted in favor of defendant. Plaintiff responded, arguing that (1) her claim was not time-barred because it did not accrue until Elizabeth's death in July 2014 and (2) Elizabeth did not have legal authority to convey plaintiff's interest in the Kentfield property. Plaintiff also pointed out that she did not receive any proceeds from the sale of the Kentfield property or an interest in the property that Elizabeth purchased using the proceeds from the sale of the Kentfield property. Following a hearing on defendant's motion, the trial court granted summary disposition in favor of defendant and entered a concomitant order stating that plaintiff's interest in the Kentfield property was extinguished. Plaintiff now appeals as of right.

## II. STANDARDS OF REVIEW

We review de novo the trial court's ruling in response to defendant's motion for summary disposition. *Beach v Lima Twp*, 489 Mich 99, 105; 802 NW2d 1 (2011). The trial court's written order reflects that summary disposition was granted pursuant to MCR 2.116(C)(7) and (C)(10). A motion for summary disposition brought pursuant to MCR 2.116(C)(10), "tests the factual support of a plaintiff's claim. In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004) (citation omitted). Defendant also moved for summary disposition pursuant to MCR 2.116(C)(7), claiming that plaintiff's claim was barred by the applicable statute of limitations as well as the doctrine of res judicata.

> In reviewing a motion for summary disposition under MCR 2.116(C)(7), a court considers the affidavits, pleadings, and other documentary evidence presented by the parties and accepts the plaintiff's well-pleaded allegations as true, except

-2-

those contradicted by documentary evidence. [*McLean v Dearborn*, 302 Mich App 68, 72-73; 836 NW2d 916 (2013).]

Similarly, this Court reviews de novo the trial court's determination regarding whether the doctrine of res judicata is applicable to plaintiff's claim. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 417; 733 NW2d 755 (2007).

## III. ANALYSIS

As an initial matter, plaintiff argues that this action seeking to quiet title to the Kentfield property is not barred by the applicable 15-year statute of limitations because her claim did not accrue until 2014, when Elizabeth died and Elizabeth's life estate in the Kentfield property was terminated. We agree.

MCL 600.5801 provides, in pertinent part:

No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

* * *

(4) **Other cases**. In all other cases under this section, the period of limitation is 15 years.

Similarly, MCL 600.5829 offers guidance with respect to when a claim to recover land *accrues*, and provides:

The right to make an entry on, and the claim to recover land accrue:

(1) Whenever any person is disseised, his right of entry on and claim to recover land accrue at the time of his disseisin;

(2) When he claims as heir or devisee of one who died seised, his claim accrues at the time of the death, unless there is another estate intervening after the death of the ancestor or devisor in which case his claim accrues when the intermediate estate expires or would have expired by its own limitation;

(3) *When there is an intermediate estate, and in all other cases where the party claims by force of any remainder or reversion, his claim accrues when the intermediate or precedent estate would have expired by its own limitation, notwithstanding any forfeiture of the intermediate or precedent estate for which he might have entered at an earlier time.*

(4) The provision of (3), does not prevent any person from entering when he is entitled to do so by any forfeiture or breach of condition, but if he claims under

-3-

either of them his claim accrues when the forfeiture is incurred or the condition broken.

(5) In all cases not otherwise provided for, the claim accrues when the claimant or the person under whom he claims first becomes entitled to the possession of the premises under the title upon which the entry or action is founded. [Emphasis added.]

Plaintiff contends that her interest in the property did not accrue until the death of Elizabeth and the termination of her life estate on July 18, 2014. As such, plaintiff argues, her complaint seeking to quiet title, filed on August 19, 2016, was timely. Specifically, plaintiff argues that her cause of action did not accrue until Elizabeth died in 2014, because plaintiff held a remainder in the Kentfield property subject to the life estates of Elizabeth and Cedric. Plaintiff is correct in her assertion and it is supported by the applicable caselaw.

MCL 554.7 provides that "[e]states, as respects the time of their enjoyment, are divided into estates in possession, and estates in expectancy." An estate in possession is one where the owner of the estate "has an immediate right to the possession of the land[,]" and an estate in expectancy is described as one "where the right to the possession is postponed to a future period." MCL 554.8. When an estate is to commence on a future day, it is a future estate. MCL 554.9. "A future estate is an estate limited to commence in possession at a future day, either without the intervention of a precedent estate, or on the determination, by lapse of time or otherwise, of a precedent estate, created at the same time." MCL 554.10. If dependent on "a precedent estate," a future estate is classified as a "remainder[.]" MCL 554.11. In *Wengel v Wengel*, 270 Mich App 86, 101; 714 NW2d 371 (2006), this Court observed, in the context of considering whether adverse possession may extinguish the right of a remainderman to real property, that "[i]n relation to their time of enjoyment, estates are divided into estates in possession and estates in expectancy, and estates in expectancy, denominated as future estates and reversions, exist where the right to possession is postponed until a future date."

"A future estate is an estate limited to commence in possession at a future day, either without the intervention of a precedent estate, or on the determination, by lapse of time or otherwise, of a precedent estate, created at the same time." MCL 554.10. A remainder is created when a future estate is dependent upon the precedent estate. MCL 554.11. Future estates are contingent "whilst the person to whom, or the event upon which they are limited to take effect remains uncertain." MCL 554.13. . . . "When a remainder on an estate for life . . . shall not be limited on a contingency, defeating or avoiding such precedent estate, it shall be construed as intended to take effect only on the death of the first taker[.]" MCL 554.29. "Expectant estates are descendible, devisable and alienable, in the same manner as estates in possession." MCL 554.35. [*Wengel*, 270 Mich App at 101.]

Plaintiff's interest in the subject property is best characterized as a remainder estate, because her right to possession of the Kentfield property was postponed until the occurrence of a specific contingency, that being the deaths of Elizabeth and Cedric. "A remainder is created when a future estate is dependent upon the precedent estate." *Id*. at 101, citing MCL 554.11.

Importantly, the *Wengel* Court recognized that "[c]ontingent remainders are not possessory estates[,]" and that a contingent remainderman's right of entry and possession of the subject property will not accrue until the life tenant passes away. *Wengel*, 270 Mich App at 103; see also *Lowry v Lyle*, 226 Mich 676, 682; 198 NW 245 (1924) (observing that "[a]dverse possession as to the rights of the remaindermen did not commence to run until their right of entry and possession accrued at the death of the life tenant.") The *Wengel* Court observed, in the factual context of a claim involving adverse possession, that a contingent remainderman does not have a present right of possession that would allow him to maintain a cause of action against an individual adversely possessing property. *Wengel*, 270 Mich App at 104. Instead, a contingent remainderman cannot take action until the required contingency occurs, which in this case is when the holders of the life estate, Cedric and Elizabeth, passed away. *Id*.

For example, in *Wengel*, concluding that the contingent remainder interest of a remainderman could not be "destroyed by adverse possession[,]" this Court reasoned as follows, in pertinent part:

> The statutes and the case law make clear that the contingent remainder interest held by defendant in the case at bar could not be destroyed by adverse possession *because a claim to recover possession of the property on the basis of said interest, or defendant's status as a remainderman, would not accrue, if at all and at a minimum, until the occurrence of the contingency, which is plaintiff's death, or, in other words, the expiration of the precedent estate. . . . The 15–year statutory period would not commence running against defendant until a cause of action accrued in which defendant sought to enforce his rights as the holder of the contingent remainder, which interest, at the time of plaintiff's death, would vest and leave defendant with a fee simple.* [*Wengel*, 270 Mich App at 104-105 (emphasis added).]

Additionally, statutory authority makes clear that "[n]o expectant estate can be defeated or barred by any alienation or other act of the owner of the intermediate or precedent estate, nor by any destruction of such precedent estate by disseizin, forfeiture, surrender, merger or otherwise." MCL 554.32. Moreover, in *Lowry*, citing *Jeffers v Sydnam*, 129 Mich 440; 89 NW 42 (1902) and the predecessor statute to MCL 554.32, the Michigan Supreme Court recognized that the holder of a life estate is precluded from conveying "any greater interest in the land than possessed by him," and a grantee of such an interest will hold only a life estate. *Lowry*, 226 Mich at 684. See also *Rendle v Wiemeyer*, 374 Mich 30, 40, 41; 131 NW2d 45 (1964) (observing that because the testator devised vested remainders to his grandchildren, any partition of the property by the holders of a life estate interest in the property were void against the remaindermen). Put simply, any conveyance by the holder of the life estate is not able to defeat the remainder interest of another. *Lowry*, 226 Mich at 684. Therefore, plaintiff's claim to the Kentfield property did not accrue until the death of Elizabeth in July of 2014 when the occurrence of the contingency allowing plaintiff to take possession of the property, the death of Elizabeth, took place and plaintiff first was able to assert her rights of possession of the Kentfield

property.[2] Before that point, plaintiff simply had no "right of entry or of possession during the existence of [Elizabeth's] life estate." *Lowry*, 226 Mich at 683. Plaintiff pursued this action within the 15-year limitation period, accordingly, this action is not barred by MCL 600.5801(4). The trial court erred in holding otherwise.[3]

Plaintiff also argues that the trial court erred in concluding that her claim is barred by res judicata. We agree.

This Court has explained:

" 'The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation.' " For res judicata to preclude a claim, three elements must be satisfied: "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." "[T]he burden of proving the applicability of the doctrine of res judicata is on the party asserting it." [*Garrett v Washington*, 314 Mich App 436, 441; 886 NW2d 762 (2016) (citations omitted).]

Pivotal to our determination regarding whether res judicata applies to bar plaintiff's claim are the proceedings that transpired in the probate court in 1997. On June 19, 1997, Elizabeth filed a petition for appointment of a conservator or for a protective order concerning plaintiff's estate. In the petition, Elizabeth outlined how she and Cedric had conveyed an interest in the Kentfield property to plaintiff in an effort to provide for her financially if they passed away. According to the petition, Elizabeth sought to sell the Kentfield property with the intention "to provide a similar benefit for [plaintiff] but to do so by taking title in the new residence in the name of herself as trustee, and providing in her trust agreement that said real estate shall be held for distribution to [plaintiff] upon Elizabeth A. Everson's death, and [plaintiff] attaining age 21."[4] On August 11, 1997, the probate court granted Elizabeth's June 19, 1997 petition, stating

---

[2] The *Wengel* Court recognized that the statute governing the accrual of a claim for a remainderman is MCL 600.5829(3). *Wengle*, 270 Mich App at 103.

[3] While defendant points to the deed that plaintiff signed as an 11-year-old child on April 2, 1997, asserting that she conveyed her remainderman interest at that time, and that any cause of action she possessed accrued then, this argument is dubious, given that it is well-settled in Michigan that "a minor lacks the capacity to contract." *Woodman v Kera, LLC*, 486 Mich 228, 236-237; 785 NW2d 1 (2010) (opinion by YOUNG, J.). Accordingly, the April 2, 1997 deed can only be asserted against plaintiff if she confirmed it after she reached the age of majority because it does not have a binding effect unless it is ratified. *Id.* (opinion by YOUNG, J.).

[4] Waivers and consents for Elizabeth's petition for a protective order were signed by plaintiff's parents, Aaron Moore and Madeline H. Everson, giving their agreement for entry of the protective order "permitting Elizabeth A Everson to deed property commonly known as 20280 Kentfield, Detroit, Michigan, and thereby extinguishing any interest in said property of Marsheri

-6-

that the proceeds of any sale of the Kentfield property were to "be placed into escrow on behalf of [plaintiff] until a trust est[ate] is established. Order to be presented." As noted earlier in this opinion, two years later, on August 26, 1999, Elizabeth, as the "court appointed representative for the estate of [plaintiff]," who was a 13-year-old minor at the time, conveyed the Kentfield property to Rondalyn Everson. Notably, all of these events predated the enactment of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, effective April 1, 2000. See 1998 PA 386. Therefore, the law in effect at the time was the Revised Probate Code, MCL 700.1 *et seq.*

MCL 700.636 set forth specific circumstances under which the real estate of a "ward"[5] could be sold by a fiduciary.

> (1) Subject to confirmation by the court, the real estate, an interest therein, or easement of a ward may be sold by the fiduciary in any of the following instances:
>
> * * *
>
> (c) When the income of the estate of a ward is insufficient to maintain the ward and his family or is insufficient to educate a minor ward or the children of a ward.
>
> (d) When it appears that it would be for the benefit of the ward that his real estate or any part thereof be sold and the proceeds thereof reinvested.

Moreover, MCL 700.634 set forth certain requirements that the fiduciary of an estate must comply with before selling real property:

> A fiduciary may sell real estate, an interest therein or easement at private or public sale if all the following occur:
>
> (a) He has the authority to sell under [MCL 700.634 to MCL 700.638].
>
> (b) He reported the sale in writing to the court for confirmation and had a hearing thereon.
>
> (c) He gave notice of the hearing on the report of sale to all parties in interest as provided by supreme court rule.

---

Dominique Depree Everson." However, the Michigan Supreme Court has made it clear that "a parent is without authority to bind his child by contract[,]" and that a parent lacks the authority to "waive the rights of the child." *Woodman*, 486 Mich at 240-241, 242 (opinion by Young, J.).

[5] MCL 700.12(2) defined "[w]ard" as "a minor or a legally incapacitated person for whom a guardian is appointed pursuant to article 4 or a protected person for whom a conservator is appointed pursuant to article 4.

(d) He filed and had approved the bond required by the court as a condition of the sale.

(e) He obtained an order from the court confirming the sale and directing the giving of a deed or other conveyance pursuant to the sale.

While the record reflects that Elizabeth, as fiduciary of plaintiff's estate, sought *permission* from the probate court to sell the Kentfield property, and the court approved the sale of the Kentfield property as a general matter, directing that the proceeds of the sale be held in trust for plaintiff, there is no indication in the record that the probate court was given the opportunity to *confirm* the actual sale, the sale price of the property or that the proceeds of the sale would indeed be held in trust for plaintiff when the property was actually conveyed to Rondalyn Everson in 1999. MCL 700.634(e); MCL 700.636(d). In any event, it does not appear from the record that Elizabeth complied with the terms of the probate court's order to place the proceeds of the sale in trust for plaintiff. Accordingly, while the probate court authorized Elizabeth generally to proceed with the sale of the Kentfield property, the record is unclear with respect to whether the probate court authorized the actual sale of the Kentfield property in 1999 when it was conveyed to Rondalyn Everson.[6] Under such circumstances, given the serious questions that remain outstanding regarding whether (1) plaintiff's remainderman interest in the Kentfield property was protected while she was a minor and (2) the applicable law, and the probate court's orders, were complied with before the Kentfield property was conveyed to Rondalyn Everson in 1999, we disagree with the trial court's assessment that res judicata operates to bar plaintiff's claims. Specifically, we are not persuaded that the issue of whether plaintiff's remainderman interest in the Kentfield property could be lawfully conveyed was raised, addressed or resolved in the probate court action or that it could have been.[7] *Garrett*, 314 Mich App at 341. Notably, plaintiff herself, an 11-year-old child at the time, was not able to do so, and the record reflects that the adults in her family did not take steps to protect plaintiff's interest in the Kentfield property or the proceeds from its sale. Therefore, the trial court's granting of summary disposition on the basis of res judicata pursuant to MCR 2.116(C)(7) was not appropriate. Moreover, because the record yields genuine issues of material fact with respect

---

[6] Notably, MCL 600.2928(1) provides:

**Disposition**. The circuit court may order the sale, lease, exchange, conveyance, and if necessary or desirable, the platting, of all or any part of any lands, tenements, and hereditaments held by an infant or other incompetent person, by way of mortgage, in trust only for others, in fee, life tenancy, tenant for years, or in any other way when it appears that the sale, lease, exchange or conveyance is necessary and proper for the support, maintenance and education of the infant or other incompetent or that the interest of such person or the person for whom the property is held will be substantially promoted by the sale, lease, exchange, conveyance or platting. This power shall be exercised in accordance with the rules of court and in the manner and with the restrictions as the court deems expedient.

[7] Our review of the probate court's July 11, 2016 written opinion confirms our conclusion.

to plaintiff's remainderman interest in the Kentfield property, the trial court erred in granting summary disposition pursuant to MCR 2.116(C)(10) and quieting title to the Kentfield property in favor of defendant.

## IV. CONCLUSION

We reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs.

/s/ Karen M. Fort Hood
/s/ Jane E. Markey
/s/ Michael F. Gadola